(*Superior Court of Cook County, In Chancery.*)

### Frank H. Collier

#### vs.

### Fannie G. Collier.

(1898.)

1. DIVORCE—INSANITY. Insanity is not a cause for divorce in Illinois.
2. DIVORCE ON GROUND OF CRUELTY AND DESERTION—ACTS OF COMPLAINANT NOT A BAR WHEN COMMITTED UNDER INSANE IMPULSE. When complainant is entitled to a decree of divorce on the ground of cruelty and desertion, the fact that he has been guilty of misconduct does not debar complainant from obtaining such divorce, where at the time of the misconduct he was acting under an uncontrollable insane impulse.

Bill for divorce and cross-bill. Heard before Judge Henry V. Freeman. The facts are stated in the opinion.

*W. P. Black, S. A. Wight* and *Frank H. Collier, pro se,* for complainant.

*Donahue & Hartnett,* for defendant.

FREEMAN, J.:—

The original bill of complaint in this case, filed by the husband, Frank H. Collier, charges the defendant, Fannie Collier, his wife, with cruelty and desertion. A cross-bill is also filed by the wife. Each party, also, charges the other with adultery.

In the view that I take of this case it will not be necessary to discuss the testimony with reference to this latter charge, as made in the original bill. I intentionally avoid any such consideration, because I believe that the complainant in the original bill is entitled to divorce upon the other grounds; and a just regard for the reputation and feelings of the innocent children of the parties seems to me to require that no unnecessary shadow shall be thrown over their future lives.

With reference to the charges of cruelty and desertion against the wife, it is, I think, only necessary to say that they are abundantly justified by the evidence; and this seemed to

be practically conceded by the counsel for the wife in his closing argument.

The complainant in the bill in consequence, as the testimony tends to show, of a blow upon the head, inflicted about ten years ago, became the victim of what is known as circular insanity. The chief characteristics of the disease appear to have been a period of excitement or mania, followed by a period of melancholia, which in turn has been succeeded by a period of comparative sanity, the longer duration of which of late is said to indicate a growing tendency toward restoration to normal health. The evidence tends to show, and the whole appearance and conduct of Mr. Collier during the hearing indicate, that he is at the present time in the full possession of his mental faculties; and, as several of the medical experts stated, apparently in better health than he ever has been since the original attack of the disease.

The testimony tends to show that soon after the malady manifested itself he was sent to Wauwatosa, a private retreat for persons afflicted with nervous and mental diseases. From there, according to testimony which is uncontradicted, he was brought to Chicago by a false telegram. When within the jurisdiction of the courts of Cook county he was immediately arrested upon a charge of insanity, and committed to an asylum. I shall not undertake to follow up the numerous trials, nor the commitments to and discharges from asylums, which are disclosed by this testimony; but it appears from the evidence that at the time his disease began to manifest itself Mr. Collier was the possessor of considerable property. He was by no means a pauper, and the evidence tends to show that had his estate been properly conserved it might have furnished adequate support for himself and his entire family during the period of his illness. It appears, however, that at the instigation of his wife, and on her complaint, he was twice committed to the Cook county insane asylum at Dunning as a pauper. This treatment was certainly illy calculated to promote his restoration to a sound condition of mental health. The evidence tends to show that he was there subjected to indignities amounting even to cruelty, which

could not but have had an injurious effect upon his malady. Possibly the conduct of his wife toward him at this and subsequent periods is explained by her own statement upon the stand, that even prior to this time she had come to entertain for her husband a feeling of loathing, which she says began prior to or about the time of the birth of one of her children, and has continued ever since.

As I have stated, it was conceded practically, by counsel for the wife, in his closing argument,—and I think the concession is amply justified by the evidence, which I deem it unnecessary to review at length—that the complainant is entitled to a divorce on the grounds I have indicated, unless the evidence should further show that the charges made in the cross-bill are of such a character and so sustained as to forbid granting to the complainant in the original bill any relief whatever.

It must be conceded that the conditions confronting the wife and children of the complainant during a portion of the period when he was under the influence of his malady were of a most trying character. There were times when the complainant, although discharged from confinement by action of the courts, as sane, and left in control of his property and children, was nevertheless indulging in conduct of such a nature that if he had been at the time in full possession of his mental powers it would have been not only inexcusable, but it would have entitled a wife to a decree against him. If these acts had been committed while he was sane they would have gone far to justify some portion of the treatment he received from his wife which I have referred to. But it is contended that at the time when he committed the acts in question the complainant in the original bill was under an uncontrollable insane impulse, and the expert testimony tends to sustain this contention. In other words, the defense is that these acts were not the acts of the complainant himself, but the acts of one who was insane and not responsible for his conduct. If this is true, then it must be held that conduct of which he was guilty at that time, committed under the influence of insane impulses over which he had no control,

does not afford ground for the relief prayed in the cross-bill. Insanity itself is not a cause for divorce in this state. The marriage vow carries with it ordinarily the obligation on the part of both husband and wife to care each for the other, in sickness as well as in health, and mental sickness does not change the obligation. The evidence tends to show that the acts complained of in the cross-bill were committed at the time when the husband was under the influence of the malady, and there is no sufficient evidence to sustain the contention that any of the acts alleged to have been committed by the husband, which would entitle the wife to the relief she seeks by her cross-bill, were committed at the time when the husband was free from the influence of mental disease.

The complainant is entitled to the relief which he seeks, and a decree may be prepared granting him a divorce upon the ground of cruelty and desertion.